UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REBECCA KRANDLE, *individually, and
on behalf of all others similarly situated*,

                                   Plaintiff,

        v.                                                      No. 22-CV-4977 (KMK)

REFUAH HEALTH CENTER, INC,

                                   Defendant.

DAWN ESPOSITO, *and* PAOLA
CORTAZAR, *individually, and on
behalf of all others similarly situated*,

                                   Plaintiffs,          No. 22-CV-5039 (KMK)

        v.                                              <u>OPINION & ORDER</u>

REFUAH HEALTH CENTER, INC,

                                   Defendant.

<u>Appearances:</u>

Michael M. Liskow, Esq.
Calcaterra Pollack LLP
New York, NY
*Counsel for Plaintiff Rebecca Krandle*

Anthony Parkhill, Esq.
Barnow and Associates, P.C.
Chicago, IL
*Counsel for Plaintiff Rebecca Krandle*

Todd S. Garber, Esq.
Andrew C. White, Esq.
Finkelstein, Blankinship, Frei-Pearson & Garber, LLP
White Plains, NY
*Counsel for Plaintiffs Dawn Esposito and Paolo Cortazar*

Matthew S. Freedus, Esq.
Feldesman Tucker Leifer Fidell LLP
Washington, DC
*Counsel for Defendant*

James P. Flynn, Esq.
Epstein Becker & Green
Newark, NJ
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Rebecca Krandle ("Krandle"), Dawn Esposito ("Esposito"), and Paola Cortazar ("Cortazar", collectively "Plaintiffs") bring two Actions individually and on behalf of all others similarly situated against Refuah Health Center, Inc. ("RHC" or "Defendant") alleging various tort claims arising out of a data breach of RHC's network systems. (*See generally* Not. of Removal ("Krandle Not. of Removal") Ex. A ("Krandle Compl.") (Dkt. No. 1-1, Case No. 22-CV-4977); Not. of Removal ("Esposito Not. of Removal") Ex. A ("Esposito Compl.") (Dkt. No. 1-1, Case No. 22-CV-5039).)[1] Before the Court are two Motions to Remand pursuant to 28 U.S.C. § 1447(c). (*See* Not. of Mot. ("Krandle Mot.") (Dkt. No. 19, Case No. 22-CV-4977); Not. of Mot. ("Esposito Mot.") (Dkt. No. 11, Case No. 22-CV-5039).) For the following reasons, both Motions are granted in part and denied in part.

---

[1] Given the similarities in the jurisdictional questions presented in both Actions, coupled with this Court's determination that the Actions are related, (*see* Dkt., Case No. 22-CV-5039 (minute entry for June 21, 2022)), the Court will address the pending Motions together in one Opinion.

I.  Background

A.  Factual Background

RHC is a not-for-profit healthcare company with its principal place of business in Spring Valley, New York.  (Krandle Compl. ¶¶ 2, 8; *see also* Esposito Compl. ¶ 9.)  As "a full-service, integrated, multi-specialty healthcare organization with four service sites and a fleet of mobile units," RHC collects and maintains the personally identifying information ("PII") and personal health information ("PHI", collectively "sensitive information") of patients in regular course of providing patient care.  (Krandle Compl. ¶¶ 11–12; *see also* Esposito Compl. ¶¶ 1–2.)  Sensitive information includes "names, Social Security numbers, driver's license numbers, state identification numbers, dates of birth, bank/financial account information, credit/debit card information, medical treatment/diagnosis information, Medicare/Medicaid numbers, medical record numbers, patient account numbers, and/or health insurance policy numbers."  (Krandle Compl. ¶ 1; *see also* Esposito Compl. ¶ 2.)  RHC provides each patient with a "Notice of Privacy Practices," which states limited circumstances where RHC will disclose sensitive information, "including, e.g., for purposes of providing . . . treatment, billing, medical research, and responding to government requests."  (Esposito Compl. ¶ 41.)

According to a notice posted on Defendant's website on April 29, 2022, hackers breached RHC's network systems between May 31, 2021 and June 1, 2021.  (Krandle Compl. ¶¶ 15–16; *see also* Esposito Compl. ¶ 32 (stating that Defendant began notifying Plaintiffs "starting on April 29, 2022").)  After completing its investigation on March 2, 2022, RHC reported that individuals accessed and acquired certain files on RHC's computer systems, including extracting sensitive information.  (*See* Krandle Compl. ¶¶ 16–17.)

Krandle, as a "former employee and patient of RHC," received a letter from RHC indicating that her sensitive information was exposed in the breach.  (*Id*. at ¶ 7.)  Esposito received a letter from RHC informing her that her sensitive information may have been compromised.  (Esposito Compl. ¶ 35.)  Esposito also alleges that she has "received increased spam and phishing attempts since the data breach and has to install a spam filter" to address an uptick in spam calls and texts.  (*Id*.)  Cortazar received a letter from RHC informing her that her sensitive information may have been compromised.  (*Id*. at ¶ 36.)  Cortazar also alleges that she "has experienced several hundred dollars' worth of suspicious charges to her credit card," requiring her to replace her credit card.  (*Id*.)

B.  Procedural History

1.  Krandle Action

On May 17, 2022, Krandle filed her initial class action lawsuit in New York state court requesting monetary damages and injunctive relief based on claims for: 1) negligence, (Krandle Compl. ¶¶ 50–57); 2) negligence per se, (*id*. at ¶¶ 58–66); 3) breach of fiduciary duty, (*id*. at ¶¶ 67–70); (4) breach of express contract, (*id*. at ¶¶ 71–76); 5) breach of implied contract, (*id*. at ¶¶ 77–84); 6) unjust enrichment, (*id*. at ¶¶ 85–91); and 7) violations of N.Y. Gen. Bus. Law § 349, (*id*. at ¶¶ 92–101).

On June 14, 2022, RHC removed the case to federal court, pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442.  (*See* Krandle Not. of Removal.)  RHC stated that it is immune from suit pursuant to 42 U.S.C. § 233 as a "'deemed' U.S. Public Health Service [("PHS")]. . . employee" and is entitled to a federal forum to determine the availability of a federal immunity defense.  (*Id*. at ¶ 4.)  In the alternative, RHC stated that this Court has jurisdiction under 28 U.S.C. § 1442 as RHC is a federal officer and/or acting under a federal officer, affording a right

of removal for "any officer . . . sued in an official or individual capacity for any act under color of such office." (*Id*. at ¶¶ 5–6.)

Plaintiff subsequently filed the instant Motion to Remand and ancillary papers on July 29, 2022. (*See* Krandle Mot.; Brief in Supp. of Mot. to Remand ("Krandle Mem.") (Dkt. No. 20, Case No. 22-CV-4977).) RHC filed its Opposition on August 29, 2022. (*See* Def's Opp. to Pls.' Mot. to Remand ("Def's Krandle Opp.") (Dkt. No. 21, Case No. 22-CV-4977).) Plaintiff filed a reply on September 12, 2022. (*See* Reply in Supp. of Mot. to Remand ("Krandle Reply") (Dkt. No. 22, Case No. 22-CV-4977).) RHC also filed a Notice of Supplemental Authority on September 13, 2022. (Def's Not. of Supp. Authority (Dkt. No. 23, Case No. 22-CV-4977).)[2] After several extensions of time, (*see* Dkt. Nos. 24–34, Case No. 22-CV-4977), the Government filed a Statement of Interest, (*see* Statement of Interest of the U.S. ("Gov't Stmt.") (Dkt. No. 35, Case No. 22-CV-4977)).[3]

### 2. Esposito Action History

On June 10, 2022, Esposito and Cortazar filed their initial class action lawsuit in New York state court requesting monetary damages and injunctive relief based on claims for: 1) negligence, (Esposito Compl. ¶¶ 64–81); 2) breach of express contract, (*id*. at ¶¶ 82–86); 3) breach of implied contract, (*id*. at ¶¶ 87–97); 4) violations of N.Y. Gen. Bus. Law § 899-AA and § 349, (*id*. at ¶¶ 98–114); and 5) invasion of privacy by intrusion, (*id*. at ¶¶ 115–23).

---

[2] The Court cites to the case page numbers found at the bottom of the supplemental authority, rather than the listed ECF numbers.

[3] The Government filed identical statements of interest in both the Krandle and the Esposito actions. (*Compare* Gov't Stmt. *with* Statement of Interest of the U.S. (Dkt. No. 31, Case No. 22-cv-5039).) For ease of review, the Court will cite to one copy of the relevant statement.

On June 16, 2022, RHC removed the case to federal court, pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442.  (*See* Esposito Not. of Removal.)  RHC's notice of removal in this Action is almost identical to the notice filed in the Krandle Action.  (*Compare* Krandle Not. of Removal *with* Esposito Not. of Removal.)  Esposito and Cortazar subsequently filed the instant Motion to Remand and ancillary papers on July 18, 2022.  (*See* Esposito Mot.; Brief in Supp. of Mot. to Remand ("Esposito Mem.") (Dkt. No. 12, Case No. 22-CV-5039).)  RHC filed its Opposition on August 29, 2022.  (*See* Def's Opp. to Pls.' Mot. to Remand ("Def's Esposito Opp.") (Dkt. No. 16, Case No. 22-CV-5039).)  RHC also filed a Notice of Supplemental Authority on September 13, 2022.  (Def's Not. of Supp. Authority (Dkt. No. 19, Case No. 22-CV-5093).)  Esposito and Cortazar filed a reply on September 19, 2022.  (*See* Reply in Supp. of Mot. to Remand ("Esposito Reply") (Dkt. No. 20, Case No. 22-CV-5039).)  After several extensions of time, (*see* Dkt. Nos. 21–28, Case No. 22-CV-5039), the Government filed a Statement of Interest, (*see* Statement of Interest of the U.S. (Dkt. No. 31, Case No. 22-CV-5039)).

## II.  Discussion

### A.  Standard of Review

"'Federal courts are courts of limited jurisdiction' that 'possess only that power authorized by Constitution and statute.'"  *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  After a case is removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  Defendant bears the burden of demonstrating that federal subject matter jurisdiction exists.  *See Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 171 (S.D.N.Y. 2003) ("On a motion to

6

remand, the party seeking to sustain the removal, not the party seeking remand, bears the burden of demonstrating that removal was proper." (quotation marks and citations omitted)).  "Unless that burden is met, the case must be remanded back to state court.  At [the motion to remand] stage . . . ., the party seeking remand is presumed to be entitled to it unless the removing party can demonstrate otherwise."  *Id*. (quoting *Bellido–Sullivan v. Am. Int'l Grp., Inc.*, 123 F. Supp. 2d 161, 163 (S.D.N.Y. 2000) (quotation marks omitted)).  In other words, "federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) (quoting *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994)).

B.  Analysis

In nearly identical memoranda of law, Plaintiffs argue that Defendant's removals to federal court are procedurally improper under both 42 U.S.C. § 233(*l*) and 28 U.S.C. § 1442. (*See generally* Krandle Mem.; Esposito Mem.)  First, Plaintiffs argue that Defendant failed to meet the procedural requirements of § 233(*l*) by removing the cases prior to the statutorily proscribed 15-day window.  (*See* Krandle Mem. 3–5; Esposito Mem. 3–5.)  Plaintiffs also argue that Defendant cannot remove the instant Actions to federal court under § 1442, because § 233(*l*)(2) exclusively governs removal by entities or individuals covered by the Federally Supported Health Centers Assistance Act ("FSHCAA").  (*See* Krandle Mem. 6–8; Esposito Mem. 5–7.)  Finally, Plaintiffs argue that § 233(a) is substantively "inapplicable to Plaintiff's claims," precluding removal under § 233(*l*)(2).  (*See* Krandle Mem. 8–15; Esposito Mem. 7–14.) The Court will address these arguments to the extent necessary to decide the instant Motions.

### 1.  Removal Under § 233

#### a.  Applicable Law

Under the Federal Torts Claims Act ("FTCA"), the United States waives sovereign immunity for certain classes of torts claims, providing federal district courts "exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'"  *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005) (quoting 28 U.S.C. § 1346(b)(1)).  "The FTCA's purpose is both to allow recovery by people injured by federal employees or by agents of the Federal Government, and, at the same time, to immunize such employees and agents from liability for negligent or wrongful acts done in the scope of their employment."  *Id.*

As relevant to the instant Action, the FSHCAA "makes the [FCTA] the exclusive remedy for specified actions against members of the [PHS]."  *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000).  The Act provides, in part:

> The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

42 U.S.C. § 233(a).  "In instances where a tort action is brought against a federally funded public health center (construed as an employee of the United States under . . . the [FSHCAA]) for conduct within the scope of its federal employment, the Attorney General . . . may certify that the health center was indeed acting as a federal employee at the time of the incident."  *Celestine*,

403 F.3d at 80.  Upon certification, the action "shall be removed . . . at any time before trial by the Attorney General" to a federal district court.  42 U.S.C. § 233(c).  "Once such a case is removed, the United States can replace the named defendant as the allegedly liable party—and the case proceeds as an FTCA suit."  *Celestine*, 403 F.3d at 80 (citing 42 U.S.C. § 233(b)).

Section 233(*l*) also provides federally funded health centers with the opportunity to "hasten the certification process by acting on their own" to remove to federal court if the Attorney General does not intervene in a timely manner.  *Id*. at 81 (emphasis omitted).  The statute provides:

> [T]he Attorney General, within 15 days after being notified of [a civil action in state court for damages], shall make an appearance in such court and advise such court as to whether the Secretary has determined . . . that such entity . . . is deemed to be an employee of the Public Health Service . . . .  If the Attorney General fails to appear in State court within the time period . . ., upon petition of any entity . . . named, the civil action or proceeding shall be removed to the appropriate United States district court.  The civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum.

42 U.S.C. § 233(*l*)(1)–(2).  Section 233 only provides for removal to federal court in these two circumstances.  *See generally* § 233.

### b.  Removal Under § 233(*l*): Krandle Motion

Krandle argues that RHC failed to meet the procedural requirements of § 233(*l*) by prematurely removing this Action to federal court prior to the statutorily proscribed window.  (*See* Krandle Mem. 3–5.)  RHC disagrees, arguing that the health center provided sufficient notice to the Attorney General upon notifying the Department of Health and Human Services ("HHS") of the pending Action.  (Def's Krandle Opp. 8–11.)

The FSHCAA provides that the "Attorney General shall defend any civil action or proceeding brough in any court against" a deemed health center brought for damages or injuries

under the scope of employment.  42 U.S.C. § 233(b).  To do this, the "United States Attorney, Attorney General, and Secretary" must receive copies of the pleadings from the health center, giving notice to the relevant parties of the action.  *Id*.  The statute seemingly creates two avenues to notify the relevant parties in the federal government: a person served with process "shall deliver . . . all process served upon him" 1) "to his immediate superior" or 2) "to whomever was designated by the Secretary to receive such papers."  *Id*.  This person, whether a representative at the deemed health center or a designated HHS official, "shall promptly furnish copies of the pleading and process therein to the United States attorney . . ., to the Attorney General, and to the Secretary."  *Id*.  According to the FTCA Health Center Policy Manual created by HHS, the Office of the General Counsel ("OGC") is the designated entity tasked with receiving legal process related to FTCA claims.  *Federal Tort Claims Act Health Center Policy Manual*, U.S. Dept. of Health & Human Servs. Health Resources & Service Administration 19, 25 (July 21, 2014), https://bphc.hrsa.gov/sites/default/files/bphc/compliance/ftcahc-policy-manual.pdf (identifying the "Claims and Employment Branch" of OGC as the entity to receive "lawsuit documentation").

Here, RHC provided HHS OGC with copies of the Krandle summons and complaint on May 26, 2022.  (Krandle Not. of Removal ¶ 26; Krandle Not. of Removal Ex. D (Dkt. No. 1-4, Case No. 22-CV-4977).)  HHS OGC confirmed receipt that same day.  (Krandle Not. of Removal Ex. D.)  As such, RHC properly provided notice to the federal government, by and through HHS, as required by the statute.  Separately, RHC also provided the U.S. Attorney of the Southern District of New York ("USAO") with the Krandle summons and complaint on June 3, 2022.  (Krandle Not. of Removal ¶ 27; Krandle Not. of Removal Ex. F ("USAO Not.") (Dkt. No. 1-6, Case No. 22-CV-4977).)  RHC removed the case to federal court on June 14, 2022.

(Krandle Not. of Removal.)  On June 17, 2022, the USAO as a delegate of the Attorney General filed a Notice of the United States in federal court, which stated that they received notice from HHS on June 9, 2022, and advised that HHS and the USAO are in the process of determining whether certification is proper.  (Not. of the U.S. (Dkt. No. 5, Case No. 22-CV-4977).)[4]

Section 233(*l*)(1) requires the Attorney General to "make an appearance" in state court "within 15 days of being notified" of the action, and the Attorney General must "advise such court as to whether the Secretary has determined . . . that [a health center] is deemed to be an employee of the [PHS]."  *Id*.  If and only if the Attorney General fails to appear within the 15-day time period, the health center can remove the action to federal court to conduct a hearing to determine if the health center is indeed protected by the FTCA.  *Id*. at § 233(*l*)(2).  Thus, to determine whether removal was procedurally proper, it is incumbent upon this Court to calculate the initial notice date to the Attorney General.

Krandle and RHC stridently argue for different calculations, posing at least three dates of official notice throughout the briefing.  Krandle first asserts that RHC "inexplicably waited until June 3, 2022 to provide the summons and complaint upon the Attorney General (as required by the statute)," setting the Attorney General's notice to that date.  (Krandle Mem. 4.)  In response, RHC argues that the statute only creates a single avenue to notify the USAO—through HHS— and RHC's email to the USAO containing the notice and summons was done so solely out of

---

[4] In response to the instant Actions, the Government provided its determination on March 23, 2023, "advis[ing] this Court that it and HHS have determined that Refuah was not deemed to be a Public Health Service employee for the purposes of the acts or omissions giving rise to the *Krandle* and *Esposito* lawsuits, and that [these] action[s] therefore [are] not subject to the provisions of 42. U.S.C. 233."  (Gov't Stmt. 10.)  Specifically, the Government stated that "[m]aintaining cybersecurity is a business function for which Refuah remains responsible regardless of whether it is a Section 330 grantee[,] and thus, the Government "will not intervene in these actions or move to substitute itself in place of Refuah as the party defendant."  (*Id*.)

courtesy.  (*See* Def's Krandle Opp. 10; Krandle Not. of Removal Ex. F ("Even though the applicable statutory scheme imposes a duty on HHS, not Refuah, to notify your office of such matters, I am nevertheless doing so here in the hope that it facilitates the requested removal and substitution.").)  If this were the case, RHC argues, the proper date to calculate the 15-day requirement would be May 26, 2022, the day RHC notified HHS.  (Def's Krandle Opp. 8–9.)  In reply, Krandle puts forth yet another possible notice date based on the federal court filing by the USAO: June 9, 2022.  (Krandle Reply 3.)

The text of the FSCHAA is instructive in this inquiry.  Specifically, the law states that it is the Attorney General's notification that governs the 15-day window, dictating that the Attorney General "shall make an appearance" in state court "*after* being notified."  § 233(*l*)(1) (emphasis added).  And "[i]f the Attorney General fails to appear in State court within the time period prescribed," RHC is allowed to initiate removal.  *Id*. at (*l*)(2).  Of the three dates provided by the parties, the Court finds that the Attorney General likely received notice on two of them: June 3, 2022 and June 9, 2022.

RHC contends that the 15-day period began when it notified HHS of the filed action in state court on May 26, 2022.  However, RHC "has cited to no authority permitting constructive notice to be attributed to the Attorney General under this theory."  *Sherman v. Dignity Health*, No. 19-CV-1584, 2019 WL 2242071, at *2 (C.D. Cal. May 23, 2019).  While this Court is unaware of binding or persuasive authority governing this particular procedural defect in the Second Circuit, this Court notes that at least four cases in other circuits support this reading of the statute.  *See, e.g.*, *id.*; *K.C. v. Cal. Hosp. Med. Ctr.*, No. 18-CV-6619, 2018 WL 5906057, at *4–5 (C.D. Cal. Nov. 8, 2018) (citing Ninth Circuit authority declining to impute the knowledge of a government agency to the U.S. Attorney or the U.S. Attorney General); *Mixon v. CareSouth*

*Carolina, Inc.*, No. 22-CV-269, 2022 WL 1810615, at *2 (D.S.C. June 2, 2022) (citing the USAO's notice asserting the date it was notified of the action, which was different than the date of HHS notification); *Sherman v. Sinha*, 843 Fed. Appx. 870, 873 (9th Cir. 2021) (memorandum opinion) (finding that "although [a defendant] initially informed HHS of the underlying complaint on January 31," the 15-day window did not begin until at least February 26 when she "provide[d] HHS with critical information" and the Attorney General subsequently appeared in state court).

Moreover, the Court notes that it agrees with RHC and its cited supplemental authority: the statute does not *require* RHC to personally serve the Attorney General.  (Def's Krandle Opp. 10; USAO Not.)  *See also Doe v. Neighborhood Healthcare*, No. 21-CV-1587, slip op. at 8 (S.D. Cal. Sept. 8, 2022) ("The Court disagrees with the argument that Neighborhood was required to formally serve the United States with the summons and pleading.").[5]  However, the statute *does* require specific notice to the Attorney General by *someone*.  Contrary to RHC's interpretation, § 233(b) allows both the health center *and* HHS to serve papers upon the USAO and the Attorney General, declining to dictate who bears the ultimate burden.  *See* 42 U.S.C. § 233(b) (requiring a person to "deliver . . . all process served upon him . . . to his immediate supervisor *or*

---

[5] The Court also notes that the case that *Doe v. Neighborhood Healthcare*, Defendant's supplemental authority, relies upon to come to this conclusion is not relevant to the instant Action.  The *Neighborhood* court relies upon *C.K. v. United States*, No. 19-CV-2492, 2020 WL 6684921 (S.D. Cal. Nov. 12, 2020), as the sole authority governing formal service to the Attorney General.  *Doe*, slip op. at 8.  However, the parties in *C.K.* did not file their initial complaint in state court and remove to federal court under § 233.  Instead, the plaintiff alleged civil rights violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1986, granting the plaintiff independent federal question jurisdiction in federal court.  *C.K.*, 2020 WL 6684921, at *2; *see also Barnes v. Sea Mar Community Health Ctrs.*, No. 22-CV-181, 2022 WL 1541927, at *5 (W.D. Wash. Apr. 27, 2022), *report and recommendation adopted* 2022 WL 1540462 (W.D. Wash. May 16, 2022).  As such, this case is not helpful.

to whomever was designated by" HHS (emphasis added)).  By emailing a copy of the notice and summons to the USAO, RHC provided the requisite notice to the federal government—as RHC is allowed to do—at least as to the U.S. Attorney's Office and the Attorney General.[6]  Charitably assuming that notification to the Attorney General on June 3, 2022 was sufficient, RHC prematurely removed this case by four days, in contravention of the FSCHAA.  For these reasons, RHC improperly removed the Krandle Action to federal court under § 233.

### c.  Removal Under § 233(*l*): Esposito Motion

Similarly, RHC prematurely removed the Esposito case to federal court in contravention of the FSHCAA.  RHC provided HHS OGC with copies of the Esposito summons and complaints on June 15, 2022.  (Esposito Not. of Removal ¶ 29; Esposito Not. of Removal Ex. C (Dkt. No. 1-3, Case No. 22-CV-5039).)[7]  On the same day, RHC provided notice to the USAO with a copy of the Esposito summons and complaint.  (Esposito Not. of Removal ¶ 29; Esposito Not. of Removal Ex. D (Dkt. No. 1-4, Case No. 22-CV-5039).)  Just one day later, on June 16,

---

[6] As a practical matter, it is clear that HHS must be involved in the certification process as to whether a deemed health center was acting within the scope of their employment.  As the agency responsible for administering the program created by the FSHCAA, counsel for HHS must weigh in based on their expertise both with deemed health centers and the scope of such centers' care.  Indeed, the Chief of the SDNY Civil Division declined to weigh in on the matter without hearing from HHS.  (USAO Not. ("I will keep this matter on our radar but we will have to wait for a referral from HHS before we take steps to remove the matter and substitute the United States.").)

However, given that removal was insufficient under § 233 no matter which date is used (i.e., June 3, 2022 or June 9, 2022), the Court declines to opine as to whether RHC's notice to the U.S. Attorney was sufficient under the statute.

[7] While RHC claims that HHS provided a "confirmation of receipt," RHC failed to provide a copy to the court.  (*See generally* Esposito Not. of Removal Ex. C.)

14

2022, RHC removed the Esposito case to federal court.  (*See* Esposito Not. of Removal.)  Given these facts, RHC clearly did not wait for the 15-day removal as required by the statute.[8]

In the notice of removal, RHC cites the Krandle action as a case "arising out of the same underlying events and raising substantially similar issues."  (Esposito Not. of Removal ¶ 29.)  In addition, RHC cites the Krandle case in emails notifying HHS and the USAO about the pending Esposito action, stating that RHC "intends to [remove the case to federal court] with the *Esposito* case, as it too arises out of covered conduct within the meaning of 42 U.S.C. § 233(a)." (Esposito Not. of Removal Ex. D; *see also* Esposito Not. of Removal Ex. C ("Refuah is requesting substitution of the United States in both cases, and intends to remove the Esposito case and ask that it be related to the *Krandle* case.").)  However, RHC fails to provide any support for this argument, let alone demonstrate why a potentially related case would be enough to contravene a statutory requirement.

Moreover, if RHC were to have attempted to bolster its argument, the Court would likely disagree.  In this District, the related-case process is governed by Rule 13 of the Rules for the

---

[8] RHC argues, without citing any authority, that "[w]hen construed in favor of removal jurisdiction, the 15 days period in § 233(*l*)(1) does not operate as a barrier to removal" under § 233 and "nothing in § 233(*l*)(1) precludes removal prior to the expiration of 15 days."  (Def's Esposito Opp. 9.)  The Court disagrees.

First, "federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Sherman*, 528 F. Supp. 2d at 325 (quoting *Lupo*, 28 F.3d at 274).  "In construing the terms of a statute, [the Court] look[s] first to its language to ascertain its plain meaning." *Cheung v. United States*, 213 F.3d 82, 89 (2d Cir. 2000).  As discussed, § 233(*l*)(1) only provides for removal in two specific circumstances: by act of the Attorney General after intervening in the case; or by Defendant, *after* the proscribed 15-day waiting period, to request a judicial determination of Defendant's status as it pertains to the FSHCAA.  *See* § 233(*l*); *Allen v. Christenberry*, 327 F.3d 1290, 1294–95 (11th Cir. 2003) ("The reason the removal by [the defendants] was improper is that the statute authorizes removal in only two circumstances, and neither occurred here.").  RHC is effectively asking the Court to read in a provision of the statute that is not there.  However, there is nothing ambiguous about this statute and congressional intent remains clear.  Contrary to RHC's assertion, there is something that "precludes removal prior to the expiration of the 15 days" under § 233, and that is § 233(*l*) itself.

Division of Business Among District Judges (the "RDB").  *Moskovits v. Bank of Am. NA*, No. 20-CV-10537, 2021 WL 467152, at *2 (S.D.N.Y. Feb. 7, 2021); *see also* Rules for the Div. of Bus. Among Dist. Judges ("RBD") 13(a)(1).  But "[a]s their preamble makes clear, the RDB rules 'are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys.'"  *United States v. Donziger*, Nos. 19-CR-561, 11-CV-691, 2020 WL 2216556, at *4 (S.D.N.Y. May 7, 2020) (emphasis omitted) (quoting RBD at 105).  "Accordingly, as the RDB clearly state, and as both the Second Circuit and [other courts in the Southern District] have held, no litigant would have any right" to deeming a case related for the purposes of this removal statute, which is arguably required to remove this case prematurely.  *Chevron Corp. v. Donziger*, No. 11-CV-691, 2011 WL 979609, at *2 (S.D.N.Y. Mar. 7, 2011) (collecting cases); *see also United States v. Brennerman*, Nos. 17-CR-155, 15-CV-70, 2017 WL 3421397, at *10 (S.D.N.Y. Aug. 8, 2017) ("[T]he RDB vest no rights in litigants—they are for internal management only." (collecting cases)).  "[T]hat fact alone dooms this aspect of [RHC's] [removal]."  *Brennerman*, 2017 WL 3421397, at *10.

Accordingly, RHC also improperly removed the Esposito Action under § 233.[9]

### 2.  Removal Under § 1442(a)(1)

In the alternative, RHC sought removal for both Actions under 28 U.S.C. § 1442(a)(1), which provides that if a civil action is commenced in state court against a federal officer "for or relating to any act under color of such office," the federal defendant may remove the action to a federal district court.  28 U.S.C. § 1442(a)(1).  (*See also* Krandle Not. of Removal ¶¶ 5–9; Esposito Not. of Removal ¶¶ 6–10.)  Plaintiff argues that removal under § 1442 was improper

---

[9] Because the Court finds that removal was improper under § 233 for both Actions, the Court declines to address the remainder of Plaintiffs' arguments regarding the applicability of § 233 at this time.  (*See* Krandle Mem. 8–15; Esposito Mem. 7–14.)

because § 233 represents a specific removal statute that governs in this case, rather than a general removal provision.  (Krandle Mem. 6–7; Esposito Mem. 5–6.)  Plaintiffs also argue that RHC cannot be treated as an employee of the federal government for any purpose other than § 233. (Krandle Mem. 7; Esposito Mem. 6.)  Finally, Plaintiffs argue that RHC cannot establish that it was "acting under" a federal officer.  (Krandle Mem. 7–8; Esposito Mem. 7.)  The Government also agrees in its statement, arguing that RHC "incorrectly claims that *Krandle* and *Esposito* are removable under 28 U.S.C. § 1442(a)(1).  (Gov't Stmt. 11.)  The Court will address each argument in turn.

a.  Applicable Law

"To invoke [§ 1442], a defendant who is not himself a federal officer must demonstrate that (1) the defendant is a 'person' under the statute, (2) the defendant acted 'under color of federal office,' and (3) the defendant has a 'colorable federal defense.'"  *Agyin v. Razman*, 986 F.3d 168, 174 (2d Cir. 2021) (quoting *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014)). The Supreme Court has noted that "the scope of the federal officer removal statute 'is not narrow or limited'" but broad to allow a defendant to "have the opportunity to present his vision of the facts to a federal, not a state, court."  *Cuomo*, 771 F.3d at 115–16 (quoting *Willingham v. Morgan*, 395 U.S. 402, 406, 409 (1969)).  As to the "acting under" provision specifically, the Second Circuit has recently held that this provision "must be read broadly" and "credit [the defendant's] theory of the case when evaluating the relationship between the [defendant's] actions and the federal officer."  *Agyin*, 986 F.3d at 175 (quotation marks omitted) (collecting cases).

17

<u>b.  Availability of 28 U.S.C. § 1442(a) Removal</u>

At the outset, the Court will address Plaintiffs' argument that removal under § 1442 is unavailable to RHC because § 233, a specific removal statute, conflicts with the general removal provision of § 1442.  (Krandle Mem. 6–7; Esposito Mem. 5–6.)  However, as RHC correctly points out, the Second Circuit has recently addressed the interplay between § 233 and § 1442 and ultimately disagreed with Plaintiffs' view.

In *Agyin*, the Second Circuit held that "[a]lthough this reading of § 1442 would permit deemed PHS employees to remove cases under § 1442, in addition to § 233, it would not render § 233 superfluous because removal under § 233 provides different rights to the removing party than does removal under § 1442."  986 F.3d at 179.  In so ruling, the *Agyin* panel highlighted the distinctions between the statutes, noting that:

> a case may be removed pursuant to § 1442 only within 30 days of receipt of the initial pleading . . . [and] an untimely removal under § 1442 remains subject to objection from [parties who may waive this untimely removal].  By contrast, a case may be removed under § 233 at any time before trial.  This extra time allows defendants to report the case to the Attorney General and to learn whether the Attorney General will certify their immunity from suit before deciding whether they must remove the case by themselves.

*Id*. at 179–80 (citations and quotation marks omitted).  In addition, "a party who removed pursuant to § 1442 is entitled to appeal an order remanding the case for lack of subject matter jurisdiction," whereas a party pursuing a § 233 removal does not have the same right.  *Id*. at 180.  Finally, "a party who removed pursuant to § 233(l)(2) is entitled to an automatic stay of proceedings in the state court, while a party who removed pursuant to § 1442 is not."  *Id*.  Addressing the "detailed scheme requiring reporting to the Attorney General [and] intervention by the Attorney General," the panel noted that "[o]nly one element of that scheme —the first sentence of § 233(l)(2), permitting removal—might overlap with § 1442."  *Id*.  The panel

ultimately concluded that, due to the distinctions identified, "it is natural to understand § 233 as providing supplemental removal rights to persons in a specific situation, even though such persons also may sometimes remove under § 1442." *Id.*

Given *Agyin*, Plaintiffs' argument regarding the overlap between the two statutes fails, and the Court must independently determine if RHC can invoke § 1442.

### c.  Applicability of 28 U.S.C. § 1442(a) Removal

Regarding the merits of the § 1442 analysis, Plaintiffs argue that (1) RHC cannot be considered a deemed employee of the Public Health Service for the purposes of § 1442 because of the specific statutory grant in § 233, (*see* Krandle Mem. 7; Esposito Mem. 6), and (2) that RHC is not considered a person "acting under" a federal officer because RHC complies with "certain federal conditions to remain eligible for federal grants," (*see* Krandle Mem. 7–8; Esposito Mem. 7).  RHC disagrees, arguing that (1) RHC and its employees were acting under a federal officer under § 1442(a)(1), (*see* Def's Krandle Opp. 18–21; Def's Esposito Opp. 17–20); and in the alternative, (2) RHC's employees are federal officers themselves under § 1442, (*see* Def's Krandle Opp. 21–25; Def's Esposito Opp. 20–24).

The Parties do not dispute that RHC followed the removal procedure under § 1442: RHC filed notices of removal in both Actions less than 30 days after receiving a copy of the initial pleading.  28 U.S.C. § 1446(a), (b), (d).  (*See also* Krandle Not. of Removal, Esposito Not. of Removal.)  It also appears that the Parties do not dispute that RHC is a 'person' under the statute and that RHC has a colorable federal defense.  *See Agyin*, 986 F.3d at 174–75 ("Razmzan is a 'person,' and he has raised a colorable federal defense. . . . The only open question therefore is whether Razmzan 'acted under color of federal office'—that is, whether he was 'acting under' a federal officer and acted 'under color of such office'—when he provided medical services at the

clinic and/or the hospital." (citation omitted)).[10]  Thus, the Court will focus its analysis on the

"acting under" federal law ambit of the § 1442 analysis.

To this, *Agyin* again directly addresses the argument between the Parties.  In *Agyin*, the

court found that a deemed community health care center doctor acted within the scope of his

employment while performing services, despite the fact that the doctor privately billed for those

services.  *Id*. at 171.  The court found that the doctor was "working hand-in-hand with the federal

government to achieve a task that furthers an end of the federal government," and later extended

legal immunity under the FSHCAA.  *Id*. at 176–77, 184–87 (quoting *Ruppel v. CBS Corp.*, 701

F.3d 1176, 1181 (7th Cir. 2012).[11]  Despite this, Plaintiffs attempt to distinguish *Agyin* by citing

another an unpublished decision also discussed at length in *Agyin*: *Veneruso v. Mount Vernon*

*Neighborhood Health Center*, 586 Fed. Appx. 604 (2d Cir. 2014) (summary order).

_____

[10] While not framed in this way, the Court could consider Plaintiffs' arguments about the applicability of § 233(a) to the cases at hand as challenging the availability of RHC's federal defense.  However, "[b]ecause a core purpose of the statute is to let the validity of the federal defense be tried in federal court, a defendant seeking removal need not 'virtually . . . win his case,' nor must his defense even be 'clearly sustainable' on the facts."  *Cuomo*, 771 F.3d at 116–17 (citations and quotation marks omitted) (quoting *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999) and then quoting *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 139 (2d Cir. 2008)).  Instead, a "merely 'colorable' defense is sufficient to 'assure the federal court that it has jurisdiction to adjudicate the case."  *Cuomo* 771 F.3d at 116 (quoting *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006)).  RHC has demonstrated this in both Actions through the various exhibits deeming RHC potentially eligible for § 233 protection.  (*See, e.g.*, Krandle Not. of Removal Ex. C ("Krandle Not. of Deeming Action") (Dkt. No. 1-3); Esposito Not. of Removal Ex. B ("Esposito Not. of Deeming Action") (Dkt. No. 1-2).)

[11] While the Court recognizes the Government's "respectful[] disagree[ment]" with *Agyin*, the Court will remain guided by *Agyin's* ambit.  (Gov't Stmt. 8 n.9.)  For example, the Government primarily cites *Watson v. Philip Morris Comps.*, 551 U.S. 142 (2007) to assert that RHC is not acting under a federal officer, (*see* Govt. Stmt. 13), however, this case is thoroughly reviewed and incorporated into *Agyin*.  *Agyin*, 986 F.3d at 175.  In addition, *Agyin* directly addresses the specific question of § 1442 removal for deemed health centers, unlike the 1976 Supreme Court case that the Government asks this Court to rely upon.  (*See* Gov't Stmt. 13–14 (analyzing *United States v. Orleans*, 425 U.S. 807 (1976)).)  As such, the Court does not find the Government's arguments persuasive.

In *Veneruso*, the court found that the health center "failed to demonstrate that it was acting under the direction of a federal officer" when it received distributions from a joint venture partner in violation of New York law. *Veneruso*, 586 Fed. Appx. at 607. The court held that the health center, "a federal grant recipient under the Public Health Service Act," could not have acted under a federal officer while it received the illegal distributions, as the health center "does not and cannot contend that any of the many federal regulations to which it is subject directed it to receive . . . the [illegal] [d]istributions." *Veneruso*, 586 Fed. Appx. at 605–08; *see also Agyin*, 986 F.3d at 179. Plaintiffs argue in in their reply memoranda that "[n]one of the regulations that [RHC] cites to directs [RHC] to inadequately protect Plaintiff[s'] and Class members' [sensitive health information]." (Krandle Reply at 11; *see also* Esposito Reply at 10 ("There was no such direction here.").) The Court disagrees.

The *Agyin* court concluded that "[t]he implication [from *Veneruso*] is that if federal regulations had directed the challenged conduct, the clinic would have been acting under a federal officer and removal would have been appropriate." *Agyin*, 986 F.3d at 179. This Court, following *Agyin*, as it must, conducts a similar analysis, looking first to the federal regulations that allow RHC to maintain its "deemed health center" status. Title 42 U.S.C. § 254b defines a health center as "an entity that serves a population that is medically underserved, or a special medically underserved population comprised of migratory and seasonal agricultural workers, the homeless, and residents of public housing, by providing . . . required health services . . . , and as may be appropriate. . . , additional health services . . . for all residents of the area served by the center." 42 U.S.C. § 254b(a)(1); *see also* 42 U.S.C. § 233(g)(4) ("An entity described in this paragraph is a public or non-profit entity receiving Federal funds under [§] 254b of this title."). More directly, and contrary to Plaintiffs' contention, RHC allegedly is performing a service

"that—in the absence of the [FSHCAA]—the federal government would have to perform itself." *Agyin*, 986 F.3d at 176.  (*See also* Def's Krandle Opp. 19; Def's Esposito Opp. 18.)

Plaintiffs' assertion in response that no regulation directs RHC to "inadequately protect Plaintiff[s'] and Class members'" sensitive health information is misplaced.  (*See* Krandle Reply at 11; *see also* Esposito Reply at 10 ("There was no such direction here.").)  Of course, the Court cannot identify—and would not expect to identify—such a statute.  But, that is not the point. Indeed, Plaintiffs fail to acknowledge the statutory requirement imposed on RHC as a condition to continue receiving grant funds that seemingly governs the protection of patient data at issue. In particular, Section 254(b)(3)(C) provides that "the Secretary may not approve an application for a grant . . . unless the Secretary determines that the entity for which the application is submitted is a health center and . . . the center will have an ongoing quality improvement system that includes clinical services and management, and that *maintains the confidentiality of patient records*."  42 U.S.C. § 254(b)(3)(C) (emphasis added).  As stated in Notices of Deeming Action, "[d]eemed health centers must continue to receive funding under . . . § 254b, in order to maintain coverage as a deemed PHS employee."  (Krandle Not. of Deeming Action; Esposito Not. of Deeming Action.)  Thus, in order to "carry out the duties of the federal government to provide medical care to the indigent," RHC must keep patient records safe as required by federal statute, arguably qualifying RHC's actions as "acting under" color of federal regulations.  *Agyin*, 986 F.3d at 176; *see also id.* at 179 (finding that the defendant was "directed by federal regulation" where the clinic was required to provide certain obstetrics and gynecological services to "maintain coverage as a deemed PHS employee").

Moreover, while applying data breaches to the regulations of § 233 appears to be one of first impression in the Second Circuit, three recent district court opinions analyze nearly identical

facts.  Each held that the failure to maintain the confidential nature of patient records constituted a "medical or related function" under the FHSCAA.  *Doe*, slip op. at 13 (holding that "failures by the health centers to maintain the confidential nature of the records constituted a medical or related function" under the FSHCAA); *see also Ford v. Sandhills Medical Foundation, Inc.*, No. 21-CV-2307, 2022 WL 1810614, at *4 (D.S.C. June 2, 2022) ("The alleged data breach of such information arose out of [the defendant's] performance of medical or related functions within the scope of its employment as a deemed PHS employee."); *Mixon*, 2022 WL 1810615, at *3 (same).  Each opinion also highlights 42 U.S.C. § 254b(3)(A), requiring a center to maintain the confidentiality of patient records.  *Ford*, 2022 WL 1810614, at *5 ("To be eligible for deemed status and receive federal funds, [the defendant] must show it 'will have an ongoing quality improvement system that includes clinical services and management, and *that maintains the confidentiality of patient records*.'" (citing 42 U.S.C. § 254b(k)(3)(C)); *Mixon*, 2022 WL 1810615 at *4 (same), *Doe*, slip op. at 13–14 ("The health centers in *Ford* and *Mixon*, like [the defendant], were statutorily mandated to preserve and store the requisite information."). "Although [RHC's] failure to maintain and protect the confidential information from unauthorized access was not done in the actual rendering of medical treatment, it is a related function because maintaining confidential personal and health information is necessary to effectively treat patients." *Doe,* slip op. at 14.

Accordingly, the Court concludes that RHC appropriately removed both Actions under § 1442 and Plaintiffs' Motions for Remand on the basis of § 1442 is therefore denied.[12]

---

[12] Because the Court finds that RHC is "acting under" the federal government for the purposes of § 1442(a)(1), the Court declines to weigh in as to whether RHC is itself a federal officer.  (*See* Def's Krandle Opp. 23; Def's Esposito Opp. 22; Gov't Stmt. 11–12.)

III.  Conclusion

For the reasons stated above, Krandle's Motion is granted in part and denied in part, and Esposito's Motion is granted in part and denied in part.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. No. 19, Case No. 22-CV-2877; Dkt. Nos. 10, 11, Case No. 22-CV-5039).  The Court will hold a status conference for both cases on April 14, 2023 at 10:30 AM.

SO ORDERED.

DATED:        March 28, 2023
              White Plains, New York

_____
       KENNETH M. KARAS
    United States District Judge